THE PEOPLE'S BUILDING AND LOAN ASSOCIATION OF CAMDEN, NEW JERSEY, v. JAMES W. WROTH ET AL.

1. Where the office of treasurer of a corporation is annual or limited, the sureties on his official bond will not be liable for a breach of the duties of such officer beyond the definite term, when the condition is for good behavior during his continuance in office; but if there be added thereto "whether of the present term for which he has been elected, or of any succeeding terms to or for which he may be elected," their liability continues.

2. The monthly dues and fines of a building and loan association being payable in cash, the presence, and acquiescence of the executive officers when promises to pay are given by members, or others for them, and accepted by the treasurer, will not discharge sureties on his official bond from liability for credit thus given, and loss.

3. The unauthorized acts or laches of one agent of a corporation cannot annul its rules relating to the duties of another agent, nor discharge him or his sureties from liability for a breach of its regulations.

4. Where fines and dues are not actually received by the treasurer, the damage sustained thereby is the rule for making the assessment.

This case was an action of debt on a bond given to the plaintiff by James W. Wroth, one of the defendants, at the time of his election as treasurer of the plaintiff, and dated April 4th, 1871. Gilbert Balson and Charles Mayhew are sureties on this bond, which was duly executed, in the penal sum of $3000, with the condition that if the said James W. Wroth, treasurer as aforesaid, shall and do well and truly execute all the duties appertaining to the said office, as treasurer of the

said association, and shall duly account for all moneys, papers of value, or other property belonging to the said association, that shall come into his hands as treasurer aforesaid, during the time he shall continue in the said office, whether of the present term for which he has been duly elected, or of any succeeding terms to or for which he may be elected, then the above obligation to be void.

The bond was accepted and approved by the plaintiff, April 5th, 1871. The association was incorporated, adopted a constitution and by-laws; James W. Wroth was elected on the first Wednesday of March in each year, from 1871 to 1878, both inclusive, treasurer of the said association; he ceased to be treasurer August 7th, 1878, when he resigned; he never executed any other bond than the one sued upon; at the time of his resignation he was indebted to the association in the sum of $3550.40 on the books, which sum was afterwards reduced by payments to $2622.40.

This was, in part, the amount received by him as treasurer, of moneys belonging to said association, and also in part the amount of dues and fines of members, receipted for in the books by him, but not actually received. Of the amount receipted for by him to the members at different times during his treasurership, $1718.05 were not paid, but the payment thereof was vouched for by Datus Drury, the secretary of the said association; these vouchers were made at the monthly meetings of the association, in the presence and with the knowledge of the officers of the association. No formal assent was given for such vouchers by the officers or by the association, nor was any objection made by the officers. The constitution and by-laws required the dues of members to be paid in cash in monthly payments.

The jury assessed the debt due the plaintiff under the condition of the bond, at $2819.08 ; being the whole amount stated on the books of the treasurer, $2622.40, and interest. The Circuit Court reserved the questions of law for the opinion of this court, and directed the jury to find a verdict on the facts.

Argued at November Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For the plaintiff, *P. L. Voorhees.*

For the defendant, *S. H. Grey.*

The opinion of the court was delivered by

SCUDDER, J.   The first question reserved is, whether the sureties in the above bond are liable for any defalcation of their principal, James W. Wroth, which occurred after March, 1872, the end of the first year of his occupancy of the office of treasurer of the association.   The office was annual, he was appointed yearly, and was continued in office until the time of his resignation and removal in July, 1878.

Since the leading case of *Lord Arlington* v. *Merriche,* 2 *Saund.* 403, it has been settled law that when an official bond is given by an officer holding for a definite term, the obligation of such bond, being in general terms conditioned for the good behavior of the officer, will not extend beyond such definite term.   *Rahway* v. *Crowell,* 11 *Vroom* 207 ; *Citizens' Loan Association* v. *Nugent,* 11 *Vroom* 215 ; *Chelmsford Co.* v. *Demarest,* 7 *Gray* 1.

Where, as in this case, the office is filled by an annual appointment under the constitution and by-laws of the association, a bond given with condition for the due execution of the duties appertaining to the office during the time the appointee shall continue in office, will be limited in its construction to the annual term.   To enlarge the responsibility of sureties in the bond there must be express words in the condition extending the time beyond the fixed term of the office.   It is not enough that the recital should be, so long as he shall continue in office, or until a successor shall be appointed ; if the office is annual or limited, the surety will not be prejudiced by a failure to appoint according to the requirement of the law or rule which regulates such appointment.   His intention to assume a further and continuing liability must be

found in the words of the bond. It is not a matter for inference, but for exposition. The surety is only bound according to the words and the intention expressed in his bond. The terms used in this bond are such as to extend the liability of the sureties beyond the annual term, for they are bound in the words of the condition, "during the time he [Wroth] shall continue in the said office, whether of the present term for which he has been duly elected, *or of any succeeding terms to or for which he may be elected.*" Words can scarcely make the continuing obligation plainer.

In *Augero* v. *Keen*, 1 *M. & W.* 390, the corresponding words of an official bond were " from time to time, and at all times thereafter during such time as he should continue in his said office, whether by virtue of his said appointment, or of any re-appointment thereto," &c. The court said that the parties meant to promise for the continuance of the party in office, and that the bond applied to all future years during which the party is continuously re-appointed. The office was annual, and yearly re-appointments were made, as in the present case, and the deficiency was charged to have occurred after the first year of office.

The case of Oswald *v.* Mayor of Berwick, which was three times argued, (1 *E. & B.* 295, 3 *E. & B.* 653 and 5 *H. L. Cas.* 856,) called for the construction of words similar to those used in this bond, " during the whole time of his continuing in the said office, in consequence of said election or under any annual or other future election of the said council, to the said office." It was finally held that the bondsmen were liable during the official's continuance in the office when there was no breach in the continuity of the holding, and that there must be both continuity and identity in the office. The question on which the difference of opinion arose in the Exchequer Chamber was whether a change in the tenure of the office from an annual holding to one during the pleasure of the town council changed the functions and duties of the office so that the continuance was broken, and the court said that the words " under any annual or other future election of the said

council to the said office," were broad enough to cover even a change in the term of the office.

It is unnecessary to cite other cases which may be found in *De Colyer on Guaranties* 253, and *Brandt on Suretyship*, §§ 139, 144.

Under the first class of cases above cited, the sureties will be responsible only for the period limited by the first election, but the time may be increased according to the second class by the words of the condition of the bond, if their reasonable and proper construction will warrant it. While, therefore, it is the admitted rule that the contract of a surety is to be construed strictly and not to be extended beyond the fair scope of its terms, the words used in the present bond are so distinct in covering any succeeding terms to or for which this treasurer may be elected, that there is no room for doubt that the liability of the obligors was extended to the time when he left the office, and covering the time when he was a defaulter.

This aspect of the case was not altered by the fact that at subsequent elections of the defendant, Wroth, as treasurer, there were other persons proposed to the company as sureties on other bonds, who appear on the minutes to have been approved by the directors, for no new bond was ever executed and accepted by the plaintiff, nor is there any purpose shown to substitute a later bond for the one in controversy, or to discharge these sureties until such new bond was actually executed and delivered.

Assuming the continuance of the liability, the next point presented for our determination is whether any allowance, by way of set-off or otherwise, should be made to the sureties for any of the moneys vouched for to the defendant, Wroth, the treasurer of the association, by the secretary, or other persons, but not paid to him in cash, and, if so, for how much.

The monthly dues and fines payable by the members to the association were, by the constitution and by-laws, to be paid to the treasurer in cash. It was a breach of the duty appertaining to the office of treasurer of the association for him to accept the promise or voucher of any member or officer of the asso-

ciation, in place of cash.    It appears from the evidence that it
was customary for some members of the association to pay
their dues to the secretary or president, with the request that
he would pay to the treasurer, to save the necessity of attend-
ance at the monthly times of payment; and in some cases,
when these members were not prepared to pay, the officer
assumed the payment for them ; the payments were some-
times withheld, and the bare promise given by the officer who
acted for these members was received by the treasurer as cash,
and was so entered on the books.    It also appears that at these
monthly meetings for the payment of dues and fines, the execu-
tive officers of the association were present, and had knowledge
of, if they did not expressly assent to, these irregular methods
of accounting for dues and fines to the treasurer, and that re-
port was made to them by the treasurer.  'It is claimed that
this conduct of the officers of the association discharges the
sureties from liability for all these sums which were not
actually paid to the treasurer, but vouched for by others with
the knowledge of such officers.    But the executive officers or
directors of this corporation had no authority to set aside the
constitution and by-laws of the association, or change the du-
ties of the treasurer as therein prescribed, nor can they by
their unauthorized acts relieve the sureties from their respon-
sibility to the corporation, representing all the members or
stockholders, for a breach of the laws of the association.    This
legal position and the argument therefor, are well stated in
*Brandt on Suretyship*, § 474 : "All the officers of a government
or corporation should observe its laws and regulations, and
the sureties of one officer cannot set up as a defence, when
sued for the misconduct of their principal, the fact that
another set of officers have neglected or violated their duty.
It should be borne in mind that all the officers of a govern-
ment or corporation are its agents only, and cannot bind their
principal by acts or defaults which are not only unauthorized
but are expressly prohibited."    This is a wholesome principle
of law in its application to mutual building and loan associa-
tions, wherein the savings of many persons are commonly in-

vested for accumulation. The carelessness and the acquiescence of certain officers of a corporation in the breach of duty of another officer shculd not discharge sureties who have undertaken that " he shall perform the duties appertaining to his office, which are fixed and known to them." The cases on this point are numerous in the notes to the citation above given. In this court, in the case of *Morris Canal* v. *Van Vorst*, 1 *Zab.* 100, it was held that the by-laws of a company requiring a periodical examination of a cashier's accounts were for the security of the company, and that a surety would not be discharged for a neglect of this duty by the directors. These by-laws, in so far as they relate to the duties of other officers, form no part of the contract between the corporation and the sureties of the cashier. Accordingly it was held in that case that mere laches·in such officers, unaccompanied with fraud, will not discharge the sureties of another officer.

In *Union Bank* v. *Forrest*, 3 *Cr. C. C.* 218, the neglect of a cashier to settle the daily accounts of the teller, according to a by-law of the bank, was held not to discharge the teller's sureties. See, also, *Amherst Bank* v. *Root et al.*, 2 *Metc.* 522.

If, therefore, the executive officers of the association were present, and by their silence, or by their participation, acquiesced in the irregular accounting for dues and fines by any arrangement between the treasurer and individual members, their acts were unofficial, outside of their duties, and do not affect the corporation. If, in the performance of their duties as a committee to audit the accounts of the treasurer, at the monthly meetings they passed them as correct, their laches or failure to comply with the laws of the association will not discharge the treasurer and his sureties from his failure to perform his duties. He is the agent of the company to receive cash, and not promises for cash, and no other officer of the corporation can enlarge this agency, or discharge his sureties for a breach of duty in this matter.

It is therefore determined on the points reserved, (1) that the defendant, Mayhew, and the other surety, are liable on said bond in this action for any defalcation of the defendant,

Wroth, which occurred in July, 1878, or at any time after March, 1872, while he was treasurer of the plaintiff; (2) that these defendants are not entitled to any allowance by way of set-off or otherwise, for any of the moneys vouched for to the defendant, Wroth, but not paid to him in cash.

The verdict in this case is rendered for the sum of $2819.08, which includes the balance of moneys actually received by the treasurer and not paid over by him ; also the amount vouched for to him which he has not received, or accounted for, and interest on the total sum. The statute concerning obligations (*Rev., p.* 742, § 8,) directs that in an action upon any bond, or for any penal sum for non-performance of covenants or agreements upon any bond with condition other than for the payment of money, the jury, upon trial of such action, shall assess damages for such of the breaches as have been broken. The breaches here assigned and proved are, that he did not well and truly execute the duties of the said office, and that he did not duly account for all moneys that came to his hands as treasurer. The sum actually received should be accounted for under the second breach, as money had and received, and the exact sum is the measure of the liability; but for fines and dues that were vouched for by others, and not received by the treasurer, the measure of liability is the damages sustained by the company. It may be that the members who have made unauthorized payments to others than the treasurer, or who have failed to pay the sums vouched for by their request, are still responsible to the association, or the corporation may have other security or means of obtaining payment of these sums. It should, therefore, be left to the jury, in making their assessment, to say what damages the plaintiff has sustained by the failure of the treasurer to execute the duties pertaining to his office in not collecting all the dues and fines in cash ; and also what moneys have come into his hands, as treasurer, which he has not paid ; the sum of these, with a proper allowance for interest, as increase of damages by delay, will be the measure of the responsibility of the bondsmen.

The verdict in the present form is erroneous, and will be set aside, and a new trial granted.